ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
KATHARINE KATES (Bar No. 155534)
katharine@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Defendant Mounir Fayez Kara (Michael Kara)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 09-cv-1880 EMC |
| Plaintiff, | **DEFENDANT MOUNIR (MICHAEL) KARA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | **Date:** February 4, 2016 |
| MOUNIR FAYEZ KARA, | **Time:** 2:30 p.m. |
| (also known as Michael F. Kara) | **Before:** Honorable Edward M. Chen, Courtroom 5, 17th Floor |
| Defendant | |

# I.    INTRODUCTION

Michael Kara does not dispute liability in this case brought by the SEC.  Michael admits that he traded on inside information.  And, for that, he pled guilty to a felony in this Court in a related criminal case.  He cooperated in criminal cases brought against family and friends who conspired and traded with him, including testifying at two trials. Ultimately, this Court sentenced Michael to six months of home confinement and three years' probation.  Also, at sentencing, Michael stipulated, and this Court ordered him, to pay $738,539.42 in restitution.  In addition, Michael consented to the forfeiture of $396,941 in funds held in his own accounts and $1,444,467 in funds shared with Emile Jilwan. (Case No.: CR 09-0417 EMC, Docket Nos. 209 and 269).

Here, the SEC and Michael do not dispute material facts.  The only dispute is what civil remedies this Court should impose on top of Michael's criminal sentence.  In this vein, Michael agrees with SEC that this Court should enjoin him from future violations of the securities laws.

The question the parties disagree on is whether this Court should order disgorgement and civil penalties beyond the restitution, forfeiture, and penalties that this Court imposed in the related criminal case.

Because the criminal forfeiture and restitution that this Court has ordered ensure that Michael will not keep ill-gotten gains, the defense believes that this Court need not order any additional disgorgement or civil penalty.  On the other hand, the SEC seeks an additional $424,988 in disgorgement, $106,423.37 in prejudgment interest, and an unspecified civil penalty.

The heart of the dispute is that the SEC does not consider funds -- more than half-a-million dollars -- that Michael paid in taxes to the IRS and the Franchise Tax Board based on the income generated from the illegal trades.  Despite the fact that Michael has paid this money in taxes, the SEC still believes that this money must be "disgorged." The defense believes that an order now to require Michael to pay the same sum again will

constitute double counting and practically speaking will constitute a penalty rather than actually disgorgement of ill-gotten gains that he kept.

Further, a civil penalty in this case is not needed to deter Michael from additional illegal conduct.  The penalties imposed in the related criminal case already accomplished this goal.  He is a convicted felon; he served six months of home confinement; and he is serving three years of probation.  An additional monetary civil penalty is unwarranted under these circumstances.

## II.    BACKGROUND

The SEC sets forth the facts surrounding the securities violations; but also worth noting is Michael's extraordinary personal history, which was chronicled during sentencing in the related criminal case.  As described at sentencing, Michael came to the United States at age 15 in order to escape the devastation of civil war in Lebanon, after experiencing unspeakable atrocities first-hand.  Like many immigrants, Michael spoke little English, and his family had few resources.  But Michael worked hard, finishing high school and graduating from college at San Francisco State.  He did so while working and helping his parents and his younger siblings financially.  Later on, he married and had two children, forming a family of his own.  His son and daughter are now young adults. He also founded and built a successful toxic-remediation environmental consulting company.  *See* Kates Decl., Exh. A, ¶¶ 73-80.

Despite his educational and professional success, Michael has suffered severe psychiatric illnesses throughout his adult life.  He suffers from Post-Traumatic Stress Disorder, rooted in the atrocities he experienced as a child during a brutal civil war.  He also suffers from Bipolar Disorder, which at times has left him delusional, paranoid, and manic.  Indeed, at one point, he was involuntarily hospitalized as a threat to himself because of his illness and his suicidal thoughts.  Fortunately, after many years, with treatment from Kaiser psychiatrists, he now is stable, and his mental illness is under control.  *Id.* ¶¶ 89-91.

In addition to his mental illness, Michael has faced numerous challenging physical ailments.  He has undergone multiple surgeries, currently has pancreatitis, and for years has faced chronic pain from injuries resulting from a car accident.  These all still require continuous and regular medical monitoring and treatment.  *Id.* ¶¶ 87-88.

As the Court learned at sentencing, Michael's illegal conduct came at a time of severe stress for him, specifically after his father became ill and died of a brain tumor.  As government-recommended neuropsychological expert Dr. John Shields—who examined Michael multiple times on behalf of both the Court and the defense—described it, his father's death set off an extended episode of uncontrolled Bipolar Disorder, with manic and psychotic aspects.  Michael's mental illness, combined with huge amounts of prescribed psychiatric medication and prescribed morphine intended to control his chronic pain, caused Michael to experience severe cognitive impairment, impacting his decision to engage in insider trading.  *Id.* ¶ 89.

Another important aspect of Michael's case is the extraordinary cooperation that Michael provided to the government after his indictment.  Shortly after the government filed criminal charges, Michael readily took responsibility for his conduct and admitted guilt.  He then provided information to the government that was critical to securing resolutions with co-defendants in his case and others.  Michael met for multiple days with the government, including representatives from both the SEC and DOJ, describing in detail the conduct of his closest friend and of others and relatives, including his own brother.  He focused the SEC and DOJ lawyers on essential documents.  Ultimately, he testified at two criminal trials.  And, to do so, he waived portions of his attorney-client and psychiatrist-patient privileges to provide information to trial counsel to allow each to examine him in detail on the most personal aspects of his mental illness and treatment.  He endured the humiliation of grueling questioning, which aired the most unpleasant details of his mental health history and troubles in open court, across two trials and multiple days.  *See* Case No.: CR 09-0417 EMC, Docket No. 237 at 4:2-5:9.

On December 10, 2014, this Court sentenced Michael to three years' probation, including six months' home confinement.  (Case No.: CR 09-0417 EMC, Docket No. 269).  Over one year later, Michael has complied with all standard and special conditions of supervision.  He continues to run his toxic remediation and environmental consulting business and remains a warm, loving, and reliable husband and father.

Further, Michael has already made, or has agreed to make, payments to the government through taxes, forfeiture, and restitution.  These amounts include:

- $573,124.80 in taxes Michael paid on the capital gains he earned from the trades in Biosite securities in the amount of $573,124.80.  *See* Declaration of Mounir (Michael) Kara, ¶ 5;

- $396,941 in monies and securities that Michael consented to forfeit, including cash from the sale of his Walnut Creek home and amounts held in Schwab accounts in Michael's name;

- $1,444,467 in funds shared with Emile Jilwan that Michael consented to forfeit from brokerage accounts held by Emile Jilwan (Case No.: CR 09-0417 EMC, Docket No. 209); and

- $ 738,539.42 in criminal restitution to which Michael stipulated at sentencing. (Case No.: CR 09-0417 EMC, Docket No. 269).

These payments ensure that Michael has not retained any of the proceeds from the underlying conduct.

## III.    ARGUMENT

### A.  Because Michael has already forfeited all ill-gotten gains, no further disgorgement is warranted.

The SEC requests that the Court order disgorgement of $424,988.  It claims that this represents the balance of the illegal profits held by Michael.  But the SEC does not consider funds that he paid to the IRS for taxes as having already been disgorged.  In fact Michael has already paid the IRS and the Franchise Tax Board $573,124.80 after declaring the capital gains on the profits from the illegal trades at issue; therefore no

further disgorgement is warranted.  To order this additional disgorgement would constitute double counting – indeed, the Department of Justice did credit these tax payments in calculating required monetary penalties imposed by this Court.  *See* Declaration of Katharine A. Kates, ¶ 3.

The district court has broad equity powers in ordering a defendant to disgorge profits earned by violating securities laws.  *SEC v. Platforms Wireless Intl Corp*., 617 F.3d 1072, 1096 (9th Cir. 2010).  "Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *Id., quoting SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998).  In exercising its discretion, the district court must "consider whether the severity of the SEC's disgorgement request is 'justified under the circumstances,' or whether it is 'unreasonable and excessive as to the [defendant].'"  *SEC v. Gowrish*, 2011 U.S. Dist. LEXIS 76114 at *25; Fed. Sec. L. Rep. (CCH) P 96,356; 2011 WL 2790482 (N.D. Cal. 2011), *quoting Hateley SEC,* 8 F.3d 653, 655-56 (9th Cir. 1993).  Courts will examine the amounts actually retained by the defendant to determine whether disgorgement is warranted by the particular facts.  *See Hately,* 8 F.3d at 656, *Gowrish,* 2011 U.S. Dist. LEXIS 76114 at *26.

Here, Michael and his trading partner, Emile Jilwan, traded in Andrx and Biosite securities in 2006 and 2007.  (Docket 152 at 6:20-9:5).  The SEC calculates the disgorgement amount by adding the trading profits in Michael's individual accounts with those in Emile's accounts, for a total of $4,322,022.  *Id.* at 20:6-14.  It then credits Michael for the sums forfeited from his accounts ($396,941) and Emile's accounts($1,444,467), the restitution already ordered by this Court in the criminal case ($738,539),  and the amount of disgorgement for which Emile is separately responsible ($1,317,087), for a total credit of $3,897,034.  *Id.* at 20:7-23.  The remaining amount is $424,988 – the amount the SEC requests in disgorgement.

Yet, Michael did not retain $424,988.  The SEC ignores that, in 2008, Michael paid taxes on the amounts he made on his Biosite trades in 2007 that exceed this amount.

Michael's 2007 Form 1040 reflects that he realized a capital gain of $1,249,637 in his Schwab account.  *See* Decl. of Mounir (Michael) Kara, ¶¶ 1-2, and Exh. A. This amount reflects the gains from the underlying Biosite trades.  *Id.*  His other earnings amounted to $121,315.  *Id.* at ¶ 3, and Exh. A.  He paid a total of $573,124 in taxes to the state and federal government.  *Id.* at ¶¶ 4-5, and Exh. B.  In short, Michael did not retain the amount requested by the SEC.

Further, his criminal conviction and the high amount of restitution and forfeiture already ordered by the Court serve as a deterrent to others; thus, no further disgorgement is warranted.

**B.  Given the large amount of restitution already ordered and Michael's punishment as a convicted felon, the Court should not impose a civil penalty.**

As with the order of disgorgement, civil penalties for securities violations are within the district court's discretion.  Because Michael has already been ordered to pay significant restitution in the criminal matter, and now stands as a convicted felon, and has suffered other consequences, no civil penalty is warranted.

The Insider Trading Sanctions Act of 1984 provides for civil penalties for insider trading.  It states in relevant part: "The amount of the penalty which may be imposed . . . shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided" as a result of the unlawful conduct. *Id.* 15 U.S.C. §78u-1(a)(2).   In analyzing the SEC's request for a penalty under §78u-1(a)(2), the district court may consider a variety of factors, including: what other penalties arise as the result of the defendant's conduct; the defendant's financial worth; and whether the defendant was employed in the securities industry.  *See Gowrish,* 2011 U.S. Dist. LEXIS 76114 at *30, *citing SEC v. Happ,* 392 F.3d 12, 32 (1st Cir. 2004).

In the present case, Michael has already been subject to significant penalties.  He has suffered a criminal felony conviction; he has been ordered to pay substantial restitution in the amount of $738,539; he has consented to forfeiture of $396,941 from his

accounts and $1,444,467 in shared accounts with Emile Jilwan; as part of his cooperation he has been subjected to public humiliation in the form of aggressive cross-examination at trial; and, due to the long investigation and trial of the related cases, he has lived with the uncertainties of the criminal and civil actions since 2009 – the stress of which have made it more difficult for him to cope with his severe mental health issues.   Further, he has cooperated with both the SEC and DOJ, helping them in their cases against his co-conspirators.  Under these circumstances, the Court should not impose an additional civil penalty.   *See SEC v. Smath,* 277 F. Supp.2d 186, 188 (E.D.N.Y. 2003) (awarding a civil penalty of $1 to a defendant who also suffered a criminal conviction); *SEC v. Moran,* 944 F. Supp. 286, 296 (S.D.N.Y. 1996) (in an Adviser's Act violation case, ordering a civil penalty far less than that requested by the SEC based on the defendant's personal suffering and other sanctions imposed).   In addition, the PSR in the related criminal case noted that Michael was not capable of paying a criminal fine in addition to restitution. *See* Decl. of Katharine A. Kates, Exh. A ¶ 103.   Finally, Michael has never been employed in the securities industry and has consented to a judgment prohibiting him from further violations of the securities laws.  *See Smath*, 277 F.Supp.2d at 188.  Under these circumstances, no civil penalty is warranted.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny any further sanctions and penalties against Michael in the form of disgorgement or a civil penalty.

Dated: January 6, 2016                                    Respectfully Submitted,


RAMSEY & EHRLICH LLP

//s//
ISMAIL J. RAMSEY
*Attorneys for Mounir Kara*